# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MIKE KASSABJI Pro Se,

    Plaintiff,

vs.                                                                                                 No. CIV 06-710 WJ/ACT

EARL BACA, GREG WHEELER,
BOB WHITE, CLAY CAMPBELL,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## DISMISSING CASE

**THIS MATTER** comes before the Court on:  the Court's *sua sponte* review under 28 U.S.C. § 1915(e)(2) of: (a) Plaintiff Mike Kassabji's Federal Lawsuit for Illegal Entry and Seizure, filed Sept. 12, 2006 (Doc. 7) ("Amended Complaint"); (b) Notice of Federal Lawsuit, filed Aug. 9, 2006 (Doc. 1) ("Complaint"); (c) Motion for Writ of Restitution, filed Nov. 19, 2006 (Doc. 11); (d) Motions for Jury Selection, filed Nov. 18 & 21 and Dec. 27, 2006 (Docs. 9, 12, & 28); (e) Motion for Default Judgment, filed Oct. 10, 2006 (Doc. 13); (f) Addendum to the Complaint, filed Jan. 30, 2007 (Doc. 32) (which the Court construes as a motion to amend to add defendants); (g) Motion to Remand, filed Feb. 15, 2007 (Doc. 33); (h) Motions to Amend/Correct Caption, filed Feb. 15 & 27, 2007 (Docs. 34 & 37); (i) Motion to Change Venue, filed Feb. 15, 2007 (Doc. 36); (j) Motion for Leave to Appeal Judge Campbell's Ruling, filed Mar. 2, 2007 (Doc. 38); and (k) Motions to Add Defendants, filed Apr. 17 and June 6, 2007 (Docs. 52 & 59); and on the Defendants' Motion to Strike

Pleadings or to Stay all Matters, filed Mar. 14, 2007 (Doc. 39).[1] The primary issues are: (i) whether Defendants Greg Wheeler and Robert M. White, who are attorneys for the City of Albuquerque, are immune from suit such that Kassabji cannot state a claim against them; (ii) whether Kassabji's claims for false or unconstitutional arrest and seizure and for malicious prosecution regarding the alleged actions of Defendant Earl Baca are premature; and (iii) whether Kassabji has stated facts indicating that he should be allowed to amend his complaint to add the Mayor of the City of Albuquerque, two judges of the Metropolitan Court, a Metropolitan Court Sentencing Officer, the manager of the Metropolitan Detention Center, and other prosecuting attorneys, acting in their official capacities, as defendants. The Court concludes that: the Defendants are not in default; the city attorneys are immune from suit; the claims against Baca are premature; Kassabji's federal claims must be dismissed; Kassabji should not be allowed to amend his complaint to add other individuals who are also immune from suit; the Court has no jurisdiction to grant much of the relief Kassabji requests, and the Court should decline supplemental jurisdiction over potential state-law claims.

## FACTUAL BACKGROUND

In conducting its review of the complaint and other documents, the Court accepts as true the facts alleged in the Amended Complaint and views all facts in the light most favorable to Kassabji. *See Curley v. Perry*, 246 F.3d 1278, 1281 (10th Cir. 2001).

In 2001, Defendant Baca, an Officer with the Albuquerque Animal Services Division, charged

---

[1] The Court liberally construes Kassabji's "Federal Lawsuit For Illegal Entry and Seizure" as an amended complaint based on a previous filing of a "Notice of Federal Lawsuit" and his statement in the second filing that his "lawsuit was originally against Officer Earl Baca of Albuquerque Animal Control, but within the last month Mr. Baca's aggression was transferred to the City Attorney Greg Wheeler, then to City Attorney Bob White, then to Judge Clay Campbell of District Court." Plaintiff's Amended Complaint at ¶ 3, p. 1-2.

Kassabji with animal abuse and illegal sale of animals. *See* Am. Comp. (Doc. 7) at ¶ 2, p. 1. That same year, the City of Albuquerque denied Kassabji's request for a breeder's permit, and Kassabji filed suit to challenge the denial in state district court. *See id.* at ¶ 7, p. 3; Doc. 15, Ex. 1 at 10 (Kassabji's "Complaint for Denial of Breeder Permit"). The state district court granted summary judgment in favor of the City in April 2004. *See* Am. Comp. at ¶ 8, p. 4; Doc. 15, Ex. 1 at 12 ("Order Granting Motion for Summary Judgment").

On July 30, 2006, Baca responded to a citizen's complaint that Kassabji was selling dogs in his front yard in Albuquerque. *See* Doc. 15, Ex. 1 at 13 (Criminal Complaint filed in Metropolitan Court). Baca knew that Kassabji still did not have a City hobby breeder's permit to sell dogs. *See id.* at 31 (Baca's Affidavit submitted in support of Application for Temporary Restraining Order). When Baca attempted to take custody of the dogs he believed Kassabji was illegally selling, Kassabji objected and tried to take the dogs into his house. Baca called for assistance from the Albuquerque Police Department. *See id.*, Ex. 1 at 13 (Criminal Complaint). The police arrested Kassabji after he refused to comply with a police officer's order to "hand over the dogs to [Baca] because they were being seized as evidence." *Id.* at 14; Am. Comp. at ¶ 1, p. 1 (alleging that Kassabji was arrested after he refused to obey the police officer's order to "hand over my dogs"). After Kassabji's arrest, Baca asserted that no one would be home to care for dogs that were inside the house and stated that "Kassabji agreed to give his house key to the police so that [Baca] could pick up the rest of the animals." Doc. 15, Ex. 1 at 14 (Criminal Complaint). Kassabji contends, however, that Baca entered Kassabji's home without his consent and without a warrant, and that Baca "stole" the dogs. *See* Am. Comp. at ¶ 1, p. 1.

Baca filed a criminal complaint in Bernalillo County Metropolitan Court on August 7, 2006,

3

charging Kassabji with violating several city ordinances, including cruelty to animals, sale or gift of animals, permit required, and number of animals. *See id.* at ¶ 5, p. 2; Doc. 15, Ex. 1 at 13-15 (Criminal Complaint). Kassabji asserts that having a City "Business Registration" gave him the right to buy and sell dogs, making Baca's arrest, seizure of the dogs, and subsequent prosecution illegal and unconstitutional. *See* Am. Comp. at ¶ 5, p. 2.

Kassabji filed his federal complaint on August 9, 2006. On August 10, 2006, the City sent Kassabji a demand-for-payment letter for fees accumulated in caring for the confiscated dogs. *See id.* at ¶ 6, p. 3; Doc. 15, Ex. 1 at 19 (August 10 Letter from City to Kassabji attached to City's Complaint for Payment of Debt). Represented by Defendant Wheeler, on August 16, 2006, the City applied for a TRO in state district court to allow the City to put Kassabji's dogs up for adoption and to order Kassabji not to acquire or possess or sell any dogs pending resolution on the merits of the criminal complaint. *See* Am. Comp. at ¶ 4, p. 2; Doc. 15, Ex. 2 at 1-2 ("Application for a Temporary Restraining Order"). In support of the TRO, the City contended that Kassabji continued to possess and sell dogs without a permit despite having been told it was illegal to do so without a breeder's permit, and the City submitted a veterinarian's affidavit stating that all but one of the dogs had ear infections and two others had medical problems. *See* Doc. 15, Ex. 2 at 2, 4 (Application for TRO; Affidavit of John Romero, D.V.M., attached in support of Application). Judge Campbell issued a TRO ordering Kassabji not to acquire, possess, or sell dogs pending a hearing he set for August 25, 2006. *See* Am. Comp. at ¶ 4, p. 2; Doc. 15, Ex. 3 (TRO). The TRO stated that Judge Campbell would determine after the hearing whether to permanently extend the TRO and would also determine whether the City should be allowed to adopt out the dogs. *See* Doc. 15, Ex. 3 (TRO). Judge Campbell held the hearing on August 25, after which he orally issued a permanent injunction granting

the relief the City sought.  *See* Am. Comp. at ¶ 4, p. 2.

Kassabji filed his Amended Complaint in federal court on September 12, 2006, adding claims against Mr. Wheeler, Mr. White, and Judge Campbell.  On September 19, 2006, Kassabji filed a motion to "annul" the August 25, 2006, state-court hearing and to "annul" the criminal complaint filed against him in metropolitan court, claiming that the August 25 hearing was "illegal" because the City obtained it by applying *ex parte* for the TRO.  *See* Doc. 10.  He concurrently sought to "redeem" the dogs, but in his petition he asserts, for the first time, that "the fact is, 'I do not even own those dogs.'  Most of them were on consignment."  *See* Doc. 11 at ¶¶ 1, 3, p.1.  In addition, in a subsequent motion for default judgment, Kassabji attached an unsworn "affidavit" from Sandra Breceda stating that she "paid $8,000 toward the 13 dogs that were in the custody of Mr. Mike Kassabji. . . . I request the return of all the 13 dogs to me so that I can recover my financial loss."  Doc. 13, Ex. D (Affidavit of Sandra Breceda dated 8/30/2006).

On September 20, 2006, Judge Campbell filed his written order allowing the City to adopt out the dogs and permanently enjoining Kassabji from acquiring, possessing, buying, selling, transporting, or negotiating for the purchase or sale of dogs, or attempting to do so, either himself or through the agency of any other persons.  *See* Doc. 15, Ex. 5 (Order).

Kassabji contends that Baca had him falsely arrested; that Baca's entry into his home and seizure of his dogs was a criminal act violating the Fourth Amendment; and that Baca committed perjury at the August 25, 2006, hearing before Judge Campbell.  *See* Am. Comp. at ¶¶ 1-2, 4, p. 1-2. He further contends that Baca and Mr. Wheeler slandered him and tarnished his reputation in a news report aired on television.  *See id.* at ¶ 5, p. 3.

Kassabji further contends that:  (i) Mr. Wheeler did not assist Kassabji in retrieving his dogs

5

but instead supported Baca and requested the TRO with a hearing on only a week's notice, *see id*. at ¶¶ 3-4, p. 2, and that Mr. Wheeler "dreamed up . . . charges as storage and maintenance fees" for the dogs that were taken into protective custody, *id.* at ¶ 6, p. 3; and (ii) Mr. White gave Kassabji "the cold shoulder and apathy" and supported Baca when Kassabji complained about Mr. Wheeler and Baca, *id.* ¶ 3, p. 2.

No summons was issued until October 10, 2006, and Defendants Baca, Wheeler, and White were not formally served with the amended complaint until October 31, 2006, and November 1, 2006. *See* Docs. 17-20.  Thus,  Kassabji filed his motion for default judgment before the Defendants had even been served with a complaint.  Judge Campbell filed a motion to dismiss in lieu of an answer, which the Court granted on January 8, 2007.  *See* January 8, 2007 Order (Doc. 29).   Represented by counsel, the remaining Defendants filed an answer on November 17, 2006.  *See* Doc. 24.

Kassabji was convicted in November 2006 of the charges filed in Metropolitan Court and plans to appeal from that decision.  *See* Second Motion to Annul ¶ 1.B, at 1 (stating that all of the charges "are bogus" and that he "will appeal the case, but it should be nullified"); Answer ¶ 5, at 2 (asserting that  Kassabji "was recently convicted of 32 separate misdemeanors as a result of his conduct related to this case, and at the time of this filing is awaiting sentencing on same").   The Court takes judicial notice that Kassabji has now been sentenced and is currently serving time in jail on his convictions, and that he has filed petitions for habeas corpus.  *See* Case No. 06cv1240 (D.N.M.).  The Court entered an order denying Kassabji's motion to annul the hearings on January 30, 2007.  *See* Doc. 31.

Kassabji's motions to add defendants and to amend or correct the caption of his case, and his "addendum to the complaint" (Doc. 32), all seek to add as defendants Albuquerque Mayor Martin

Chavez, two metropolitan judges who presided over the criminal charges against Kassabji, a sentencing officer who works for the metropolitan court, the manager of the jail where Kassabji has served his sentence, and additional prosecuting attorneys.

## APPLICABLE LEGAL STANDARDS

Because Kassabji is proceeding *in forma pauperis*, the Court "shall dismiss" the case "at any time if the court determines that . . . the action . . . is frivolous . . . [or] fails to state a claim on which relief may be granted; or [] seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); *see Curley*, 246 F.3d at 1283-84.

In deciding a motion to dismiss for failure to state a claim, the Court applies the following standard:

> [A]ll well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party. It is true that dismissal under Rule 12(b)(6) is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice. It is also well established that dismissal of a complaint is proper only if it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.

*Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (internal quotation marks and citations omitted); *Curley*, 246 F.3d at 1281 (holding that court dismissing case for failure to state a claim under 28 U.S.C. § 1915(e)(2) "must accept the allegations of the complaint as true and view them in the light most favorable to the plaintiff").

Further, in reviewing a pro se complaint, a court applies the same legal standards applicable to pleadings counsel has drafted, but is mindful that the complaint must be liberally construed. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "The broad reading of the plaintiff's complaint [, however,] does not relieve the plaintiff of alleging sufficient facts on which a recognized legal claim could be based." *Id.*

7

> [T]he [pro se] plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint. Nevertheless, conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based. This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted. Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations.

*Id.* (citations omitted). "He who proceeds pro se with full knowledge and understanding of the risks does so with no greater rights than a litigant represented by a lawyer, and the trial court is under no obligation to become an 'advocate' for or to assist and guide the pro se layman through the trial thicket." *United States v. Pinkey*, 548 F.2d 305, 311 (10th Cir. 1977).

## ANALYSIS

**1. The Defendants are not in default.**

As discussed above, the Defendants timely filed an answer to Kassabji's complaint. They are, therefore, not in default and the Court shall deny Kassabji's motion for default judgment.

**2. Defendants White and Wheeler are immune from suit.**

"[I]n initiating a prosecution and in presenting the [City's] case, the prosecutor is immune from a civil suit for damages under § 1983." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Except for his claim of defamation, Kassabji's allegations against Defendants White and Wheeler involve their decisions to initiate and prosecute the civil and criminal cases against Kassabji and to refuse to prosecute Baca for Kassabji's complaints arising out of the same event. They are, therefore, absolutely immune from suit on these acts. *See Meade v. Grubbs*, 841 F.2d 1512, 1532 (10th Cir. 1988) (holding that state attorneys' "alleged failure to initiate a civil or criminal complaint against other state officials, and [the] decision not to prosecute, fall within the parameters of absolute [prosecutorial] immunity").

8

### 3. The federal claims against Baca are premature.

As set forth above, the facts Kassabji pleaded demonstrate that there are pending state civil and municipal criminal proceedings and appeals involving Kassabji based on the same factual predicate as his federal complaint. *See* Am. Comp. at ¶¶ 1-9, p. 1-4. Kassabji attempts to state claims for false and unconstitutional arrest violating the Fourth Amendment, unconstitutional seizure of his dogs in violation of the Fourth Amendment, and perjury – which the court construes as a claim for malicious prosecution – against Baca by contending that Baca did not have probable cause to have him arrested or to seize the dogs, and that he lied at the TRO hearing.

The metropolitan and state-court records show that the dogs were seized as evidence of the criminal charges of illegal sale of dogs and of animal cruelty/abuse, and to place them in protective custody. *See* Am. Comp. at ¶¶ 1, 5, p. 1, 3; Doc 15, Ex. 1 at 13-15 (Criminal Complaint) & Ex. 2 at 6-9 (Baca Affidavit attached to Application for TRO). Whether the claims against Baca are couched in terms of state-law claims for false arrest/malicious prosecution or as one under 28 U.S.C. § 1983 for damages for violation of his constitutional right to be free from warrantless arrests and seizures of property unsupported by probable cause,[2] a ruling or judgment in Kassabji's favor "would necessarily imply the invalidity of any conviction or sentence that might result from prosecution of the pending charges." *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999). Kassabji's claims against Baca are, therefore, barred in federal court as premature until the underlying criminal charges in metropolitan court are dismissed or resolved in Kassabji's favor. *See id.* Because Kassabji has been convicted in the criminal trial in metropolitan court for the acts for which he was

---

[2] *See, e.g., Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001) (noting that the Fourth Amendment protects against unreasonable seizures of property in case in which plaintiff alleged officers improperly seized her three horses without probable cause).

9

arrested, *see* Defendants' Answer at ¶ 5, probable cause for his arrest and the reasonableness of the dogs' seizure would be conclusively established and would preclude a subsequent civil action until the conviction or sentence is overturned or invalidated. *See Beck*, 195 F.3d at 556-57; *Adams v. Connors*, 2002 WL 1827632, *7 (N. D. Ill. 2002) (unpublished) (concluding, in case brought under § 1983 for the plaintiff's allegedly unreasonable arrest and for the unreasonable seizure of his dog, that it "was entirely reasonable and necessary for the police to take possession of the dog; not only was the dog evidence [of the animal abuse charge that was later dismissed], but the unacceptable alternative to impounding the dog was leaving it unattended to roam the streets"). Because Kassabji has not alleged that the criminal charges were either dismissed or resolved in his favor, the Court shall dismiss as premature his claims for a false and/or unconstitutional arrest, for unreasonable seizure of his dogs, and for malicious prosecution.

**4. No allegations support further amendment of the amended complaint.**

The Court further concludes that Kassabji should not be permitted to amend his complaint to add other city and county officials and judges as defendants because Kassabji has not stated any facts to support a claim against them in either their official or individual capacities, and because they are immune from suit.

**5. The relief requested in several motions is barred by the *Rooker-Feldman* doctrine.**

Kassabji's Motion for Writ of Restitution, his Motion to Remand, his Motion to Change Venue, and his Motion for Leave to Appeal Judge Campbell's Ruling all request relief that the Court has already ruled it has no authority to grant. *See* January 30, 2007 Order at 3-4, quoting *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1234-35 (10th Cir. 2006). Kassabji seeks to have the Court intervene and interfere with the metropolitan-court and state-court proceedings, which it may not do.

The *Rooker-Feldman* doctrine deprives this Court of jurisdiction to grant relief the requested relief because it "would necessarily undo" the state-courts' judgments, and place Kassabji "back in the position" he occupied prior to the state-courts' rulings. *See Mo's Express*, 441 F.3d at 1237. The Court again instructs Mr. Kassabji that his remedy is an appeal in state court.

### 6. The Court will not take supplemental jurisdiction over state-law claims.

The only federal claims Kassabji attempted to allege were for violations of the Fourth Amendment, and, as discussed above, those claims must be dismissed as premature. Because Defendants White and Wheeler, acting in their official capacities as prosecutors, are absolutely immune from suit, the only remaining potential claim in the amended complaint is a state-law claim for defamation against Baca and Mr. Wheeler. *See Siegert v. Gilley*, 500 U.S. 226, 232-33 (1991) (stating that "[d]efamation . . . is a tort actionable under the laws of most states, but [is] not a constitutional deprivation," and there is no "constitutional protection for the interest in reputation").

A federal district court may decline taking supplemental jurisdiction over potential state-law claims when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The United States Court of Appeals for the Tenth Circuit has instructed district courts that, when federal jurisdiction is based solely upon a federal question, absent a showing that "the parties have already expended a great deal of time and energy on the state law claims, . . . a district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial." *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002); *see McWilliams v. Jefferson County*, 463 F.3d 1113, 1117 (10th Cir. 2006) (citing § 1367(c)(3) and stating that, "the pre-trial dismissal of all federal law claims, leaving only a state law claim, generally prevents a district court from reviewing the merits of the

11

state law claim"). Retaining jurisdiction over any potential state-law claim in this case is not supported by any of the factors identified in *Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990) – "the nature and extent of pretrial proceedings, judicial economy, convenience, or fairness." *See McWilliams*, 463 F.3d at 1117 (citing *Thatcher Enterprises* and remanding to the trial court "for further development to decide whether . . . to retain the state law claim, [following the cautions developed] in *Carnegie-Mellon University v. Cohill*: "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)").

The claims over which the Court had original jurisdiction have been dismissed; no discovery has been conducted in this case; and no energy has been expended on the potential state-law claims. The Court therefore declines to exercise supplemental jurisdiction over Kassabji's potential state-law claim for defamation. *See* § 1367(c)(3); *Botefuhr*, 309 F.3d at 1273.

**IT IS ORDERED** that Kassabji's Motion for Writ of Restitution (Doc. 11), his Motion for Default Judgment (Doc. 13), his Motion to Remand (Doc. 33); his Motions to Amend/Correct Caption (Docs. 34 & 37); his Motion to Change Venue (Doc. 36); his Motion for Leave to Appeal from Judge Campbell's Ruling (Doc. 38), and his Motions to Add Defendants (Docs. 32, 52 & 59) are DENIED on the merits.

**IT IS FURTHER ORDERED** that Kassabji's Motions for Jury Selection (Docs. 9, 12, & 28) and Motions to Compel (Docs. 35, 41, and 44), and the Defendants' Motion to Strike Pleadings or to Stay all Matters (Doc. 39) are DENIED as moot.

**IT IS FINALLY ORDERED** that Kassabji's Amended Complaint is DISMISSED.

```
_____
UNITED STATES DISTRICT JUDGE
```